## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| DAVID PERLSTEIN, ) | |
| Individually and on behalf of a class, ) | |
| ) | |
| Plaintiff, ) | Case No. |
| v. ) | |
| ) | **COMPLAINT** |
| ) | **CLASS ACTION** |
| LBC EXPRESS, INC. ) | **JURY TRIAL DEMANDED** |
| ) | |
| ) | |
| Defendant. ) | |

## INTRODUCTION

1.   Plaintiff David Perlstein ("Plaintiff"), individually and on behalf of a class defined herein, brings this action against LBC Express, Inc. ("Defendant") to secure statutory damages for willful, i.e. reckless, violations of the Fair and Accurate Credit Transactions Act ("FACTA") amendment to the Fair Credit Reporting Act ("FCRA").

2.   The operative provision of FACTA, codified at 15 U.S.C. §1681c(g), provides that:

> No person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of sale or transaction.

3.   The purpose of this "truncation requirement" is to thwart identity theft.

4.   Despite the clear language of the statute, Defendant willfully or recklessly printed more than the last 5 digits of the card number on a minimum of thousands of receipts provided to cardholders at the point of sale or transaction. As such, Plaintiff and numerous other persons who conducted business with Defendant during the time frame relevant to this complaint, each of whom paid for goods using a credit or debit card and were provided with a violative receipt,

were subjected to Defendant's violations of § 1681c(g). As consequence, each has been uniformly burdened with an elevated risk of identity theft, and is entitled to an award of statutory damages.

5. Despite years of publication, notice and near universal compliance by other merchants, Defendant has willfully and recklessly failed to comply with the truncation requirement. The length and scope of these violations cannot be determined without discovery, but based on the timing and location of the violations with respect to Plaintiff, the scope of such violations and the number of victims such as Plaintiff plainly meets the numerosity requirements of Federal Rule of Civil Procedure 23(a).

6. Plaintiff brings this action against Defendant based on its willful and reckless violations of 15 U.S.C. §§ 1681 *et seq.* and seeks statutory damages, attorneys' fees, costs, punitive damages and such other relief as the Court deems proper.

**JURISDICTION AND VENUE**

7. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 and 15 U.S.C. § 1681p ("FCRA").

8. Venue is proper because Defendant conducts business within this jurisdiction, and the transaction giving rise to this lawsuit occurred in this district.

**Background of FACTA**

9. In 2003, FACTA was enacted by Congress, and signed into law by President George W. Bush. One of FACTA's primary purposes was to amend the FCRA through the addition of identity theft protections for consumers.

10. Congress determined the account number is the "single most crucial piece of information a criminal would need to perpetrate account fraud." Vol. 154, No. 78 Cong. Rec.

H3730 (May 13, 2008) (Rep. Mahoney). The inclusion of excess account information on a receipt enables anyone who sees the receipt to use the data in it to discover further information about the consumer.

11. At that time, identity theft had "reached almost epidemic proportions." H.R. Rep. No. 108-263 at 25 (2003). Over 27 million Americans had been victims of identity theft in the past five years, and the estimated cost to consumers and the economy was over fifty billion dollars annually. *See* Federal Trade Commission, *Identity Theft Survey Report* (2003). Every year, identity theft results in billions of dollars of loss, which has a significant effect on consumers and the economy.[1] Further the direct costs of financial fraud, identity theft, or even the fear of identity theft, have a powerful psychological effect on consumers, as "36% of identity theft victims reported moderate or severe emotional distress as a result of the incident." Bureau of Justice Statistics, U.S. Dep't of Justice, *Victims of Identity Theft, 2014*, at 1 (Sept. 2015).

12. The complex dimensions of identity theft make the risk to any particular consumer near impossible to quantify. Congress is best equipped to evaluate and address that risk. In doing so with FACTA, Congress decided to "require the truncation of credit and debit card account numbers on electronically printed receipts to prevent criminals from obtaining easy access to such key information," and to "limit the number of opportunities for identity

---

[1] See Javelin Strategy & Research, 2015 Identity Fraud: Protecting Vulnerable Populations 6, at pp. 7, 14, available at https://www.javelinstrategy.com/account/2015-identity-fraud-protecting-vulnerable-populations?token=yB71qLr7 (last accessed 2/23/2017). In 2014 and 2013, respectively, approximately 12.7 million and 13.1 million consumers experienced identity theft. (*Id.*) In 2010, about 7% of households had at least one member who experienced one or more types of identity theft. Bureau of Justice Statistics, U.S. Dep't of Justice, Identity Theft Reported by Households, 2005-2010, at 1 (Nov. 2011).

thieves to 'pick off' key card account information." S. Rep. No. 108-166, at pp. 3 and 13 (2003).

13.  The truncation requirement was specifically designed to thwart identity thieves' ability to gain sensitive information regarding a consumer's credit or bank account from a receipt provided to the consumer during a point of sale transaction, which, through any number of ways, could fall into the hands of someone other than the consumer.

14.  In providing minimum statutory damages of $100 to $1,000 for each violation of the truncation requirement in 15 U.S.C. § 1681n(a)(1)(A), Congress appropriately exercised its power to elevate the specifically identified risk of harm of having a merchant print a receipt showing any of a particular individual's first eleven credit card digits into a legally cognizable injury.

15.  After enactment, FACTA provided three years in which to comply with its requirements, mandating full compliance with its provisions no later than December 4, 2006.

16.  The requirement was widely publicized among retailers and the FTC. For example, on March 6, 2003, in response to earlier state legislation enacting similar truncation requirements, then-CEO of Visa USA, Carl Pascarella, explained that, "Today, I am proud to announce an additional measure to combat identity theft and protect consumers.  Our new receipt truncation policy will soon limit cardholder information on receipts to the last four digits of their accounts.  The card's expiration date will be eliminated from receipts altogether. . . . The first phase of this new policy goes into effect July 1, 2003 for all new terminals.. . . ."[2] Within 24 hours, MasterCard and American Express announced they were imposing similar requirements.

---

[2] Source: http://www.prnewswire.com/news-releases/visa-usa-announces-account-truncation-initiative-to-protect-consumers-from-id-theft-74591737.html (Last accessed: 2/23/2017).

17. Card issuing organizations proceeded to require compliance with FACTA by contract, in advance of FACTA's mandatory compliance date. For example, the publication, "Rules for Visa Merchants," which is distributed to and binding upon all merchants that accept Visa cards, expressly requires that "only the last four digits of an account number should be printed on the customer's copy of the receipt" and "the expiration date should not appear at all."[3]

18. Because a handful of large retailers did not comply with their contractual obligations with the card companies and the straightforward requirements of FACTA, Congress passed The Credit and Debit Card Receipt Clarification Act of 2007 in order to make technical corrections to the definition of willful noncompliance with respect to violations involving the printing of an expiration date on certain credit and debit card receipts before the date of the enactment of this Act.[4]

19. Importantly, the Clarification Act did not amend FACTA to allow publication of the expiration date of the card number. Instead, it simply provided amnesty for certain past violators up to June 3, 2008.

20. In the interim, card processing companies continued to alert their merchant clients, including Defendant, of FACTA's requirements. According to a Visa Best Practice Alert in 2010:

> Some countries already have laws mandating PAN truncation and the suppression of expiration dates on cardholder receipts. For example, the United States Fair and Accurate Credit Transactions Act (FACTA) of 2006 prohibits merchants from printing more than the last five digits of the PAN or the card expiration date on any cardholder receipt. (Please visit

---

[3] Source: http://www.runtogold.com/images/rules_for_visa_merchants.pdf (Last accessed: 2/23/2017).
[4] Source: https://www.govtrack.us/congress/bills/110/hr4008/text (Last accessed: 2/23/2017).

http://www.ftc.gov/os/statutes/fcrajump.shtm for more information on the FACTA.)

To reinforce its commitment to protecting consumers, merchants, and the overall payment system, Visa is pursuing a global security objective that will enable merchants to eliminate the storage of full PAN and expiration date information from their payment systems when not needed for specific business reasons. To ensure consistency in PAN truncation methods, Visa has developed a list of best practices to be used until any new global rules go into effect.

21.   So problematic is the crime of identity theft that the three main credit reporting agencies, Experian, Equifax, and Transunion, joined to set-up a free website (<http://www.annualcreditreport.com>) in order to comply with FACTA requirements and to provide the citizens of this country with a means of monitoring their credit reports for possible identity theft.

## Defendant's Prior Knowledge of FACTA

22.   Most of Defendant's business peers and competitors readily brought their credit card and debit card receipt printing process into compliance with FACTA by programming their card machines and devices to comply with the truncation requirement.  Defendant could have readily done the same.

23.   Not only was Defendant informed it could not print the first four digits of credit card numbers, it was contractually prohibited from doing so.  Defendant accepts credit cards from all major issuers; these companies set forth requirements that merchants, including Defendant, must follow, including FACTA's redaction and truncation requirements.

24.   As noted above, the processing companies have required that credit card expiration dates not be shown since 2003 and still require it.  For example, American Express required:

> Pursuant to Applicable Law, truncate the Card Number and do not print the Card's Expiration Date on the copies of Charge Records delivered to Card Members. Truncated Card Number digits must be masked with replacement characters such as "x," "*," or "#," and not blank spaces or numbers.

25. Similarly, MasterCard required in a section titled Primary Account Number (PAN) truncation and Expiration Date Omission:

> A Transaction receipt generated by an electronic POI Terminal, whether attended or unattended, must not include the Card expiration date. In addition, a Transaction receipt generated for a Cardholder by an electronic POI Terminal, whether attended or unattended, must reflect only the last four digits of the primary account number (PAN). All preceding digits of the PAN must be replaced with fill characters, such as "X," "* ," or "#," that are neither blank spaces nor numeric characters.

26. A bulletin dated June 14, 2006 issued by AllianceData, a credit card processor, informed its customers that under FACTA "no person that accepts credit cards or debt cards for the transaction of business shall print more that the last 5 digits of the card number . . . upon any receipt provided to the cardholder at the point of sale transaction." It further stated that Visa required compliance by July 1, 2006 and MasterCard by April 1, 2005.

27. Upon information and belief, Defendant is a member of various trade groups that informed their members about the truncation requirements. Defendant, on information and belief, received and understood such communications.

28. On information and belief, commercial liability insurance is typically negotiated and priced by retailers including, on information and belief, Defendant, with specific consideration of coverage for a violation of FACTA.

29. Governmental agencies have informed businesses, including Defendant, about the importance of FACTA, why the law is in place and what business must do to be compliant or

risk statutory penalties. For example, the Federal Trade Commission issued a business alert in May 2007

30. As early as May 2007, the Federal Trade Commission issued a business alert entitled "Slip Showing? Federal Law Requires All Businesses to Truncate Credit Card Information on Receipts," which stated: "According to the federal Fair and Accurate Credit Transactions Act (FACTA), the electronically printed credit and debit card receipts you give your customers must shorten – or truncate – the account information. You may include no more than the last five digits of the card number, and you must delete the card's expiration date." The FTC alert further informed businesses that "you may include no more than the last five digits of the [credit and debit] card number, and you must delete the [credit and debit] card's expiration date." .

31. By virtue of the matters set forth in paragraphs above, Defendant knew or should have known of their obligations under FACTA for years before the FACTA violations identified in this Complaint.

## PARTIES

32. Plaintiff, David Perlstein, is a resident of New York.

33. Defendant LBC Express, Inc. is a corporation based in the Phillipines.

34. Defendant is a "person that accepts credit cards or debit cards for the transaction of business" within the meaning of FACTA.

## CLASS ALLEGATIONS

35. Plaintiff brings this action on behalf of a class pursuant to Fed. R. Civ. P. 23(a) and (b)(3).

36. The proposed class is defined as:

>All persons in the United States who used either a debit or credit card at any of Defendant's locations and were provided an electronically printed receipt at the point of sale or transaction by any Defendant showing more than the last five digits of that person's credit or debit card number for a time period beginning five years prior to the date of the filing of this lawsuit until the date of the class is certified.

37. The class is so numerous that joinder of all individual members in one action would be impracticable.

38. There are, on information and belief, hundreds if not thousands of persons who meet the class definition, all of whom can be individually identified through the use of their credit card data, or through other customer databases, such as catalog mailing lists, kept and maintained by defendant.

39. Plaintiff's claims are typical of the claims of the class members. All are based on the same legal theories and arise from the same conduct. There are common questions of fact and law affecting members of the class, which common questions predominate over questions which may affect individual members. These include the following:

   a. Whether Defendant provided customers with a sales or transaction receipts which failed to comply with the truncation requirement;

   b. Whether Defendant's conduct was sufficiently reckless to qualify as "willful" under FACTA.

   c. The uniform amount of statutory damages to award to each member of the class.

40. Plaintiff will fairly and adequately represent the class members.

41. Plaintiff has no interests that conflict with the interests of the class members.

42. Plaintiff has retained counsel experienced in consumer class action matters.

43. A class action is superior to other available means for the fair and efficient adjudication of the claims of the class members.

## CLAIM FOR RELIEF

44. Plaintiff repeats all previous allegations with the same force and effect as if fully stated herein.

45. In transacting their business, Defendant uses numerous cash registers and/or other machines or devices that electronically print receipts for credit card and debit card transactions.

46. Plaintiff is the holder of a "Master Card" bank issued credit and/or debit card as defined under 15 U.S.C. § 1681a.

47. On February 6, 2017, Plaintiff presented his credit card to ship a package and was provided with a receipt.

48. At the completion of the above purchase, Plaintiff was given a customer copy of a computer-generated cash register receipt that published the first four digits of Plaintiff's credit card number. (hereinafter the "Receipt").  The Receipt also published the last four digits of Plaintiff's credit card number. The receipt stated on the top "Customer Copy".

49. Defendant was giving out such violative receipts to its customers since at least August 6th of 2015.

50. On information and belief, Defendant's computer systems which generated the receipt was programmed through hardware or software design and setup to print the first four digits of credit card numbers on each and every credit card receipt that Defendant's computer systems or any of their constituent hardware and software components generated.

51. To the extent that additional terminals were programmed to operate in violation of FACTA, the number of transactions generating illegal receipts under FACTA can total into the tens or hundreds of thousands per year in New York City alone, and many times that amount nationwide.

52. In allowing point of sale receipts for transactions such as the Perlstein Receipt to include digits other than the last five digits of customers' credit card numbers throughout their nationwide retail outlets, Defendant acted in reckless disregard of the applicable legal standard, as to which they have been on repeated actual notice for many years.

53. It would have been simple to require its store managers to glance at the customer receipts to determine if the credit card information was properly truncated. Failure to employ even such a rudimentary safeguard was at a minimum reckless,

54. This, and other conduct of Defendant alleged herein, was "not only a violation under a reasonable reading of the statute's terms, but . . . the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless," and was thus "willful" within the meaning of FACTA, as established by the United States Supreme Court. *Safeco Ins. Co. of America v. Burr*, 551 U.S. 47, 68 (2007).

55. With respect to point of sale machines, terminals or devices that were first put into use after January 1, 2005, 15 U.S.C. § 1681c(g)(3)(B) required immediate compliance with the provisions of 15 U.S.C. § 1681c(g)(1).

56. With respect to point of sale machines, terminals or devices that had been in use before January 1, 2005, 15 U.S.C. § 1681c(g)(3)(B) required immediate compliance with the provisions of 15 U.S.C. § 1681c(g)(1) on or after December 1, 2006

57. In enacting FACTA, Congress acted to prevent identity theft that can occur when card holders' private financial information, such as a card holder's complete credit card number, is publicly exposed on electronically printed payment card receipts. S*ee* 149 Cong. Rec. H8122-02 (statement of Rep. Shadegg) ("[T]he bill requires that anytime a transaction is made and information is transmitted using a credit card number,

that number has to be truncated so that someone who wants to steal your identity by grabbing ahold of your credit card number will not have the full number"); 149 Cong. Rec. H8122-02 (statement of Rep. Jackson-Lee) ("This bill ... will include comprehensive identity theft ... provisions." H.R. Conf. Rep. No. 396, 108th Cong., 1st Sess. (2003) (statement of Rep. Oxley) ("One of the central elements of [the FACTA bill] was to make the new fraud prevention ... contained in the legislation the new uniform national standards on those subject matters. The bill was drafted in this way because identity theft is a national concern.")

58. FACTA thus "requires the truncation of credit and debit card account numbers on electronically printed receipts to prevent criminals from obtaining easy access to such key information." S. Rep. No. 108-166, at 3 (2003)

59. Congress imposed that requirement "to limit the number of opportunities for identity thieves to 'pick off' key card account information," *id*.at 13, based on its determination that printing more than the last five digits of a consumer's credit card number poses an unacceptable risk of identity theft. *See*, *e.g.*, FACTA, Pub. L. No. 108-159, Title I, Subtitle A, 117 Stat. 1952 (including truncation requirement in subtitle entitled "identity theft prevention.")

60. In providing minimum statutory damages of $100 to $1,000 for each violation of the truncation requirement in 15 U.S.C. § 1681n(a)(1)(A), Congress appropriately exercised its power to elevate the specifically identified risk of harm of having a merchant print a receipt showing any of a particular individual's first eleven credit card digits into a legally cognizable injury.

61. In FACTA, Congress specifically identified the concrete harm it sought to alleviate (identity theft risk), determined that first eleven digits of credit card numbers should be redacted to alleviate that risk, and extended standing to vindicate that right through statutory damages, recoverable by the consumer/cardholder as to each issuance of a receipt resulting from a willful, i.e. reckless, violation of the statute. Congress has further related that injury to the class of persons entitled to bring suit (those who are given a receipt printing prohibited digits of their own credit card information and restricted the right to seek damages to that class of persons only.

62. On June 3, 2008, President George W. Bush signed The Credit and Debit Card Receipt Clarification Act (Clarification Act), which amended FACTA. The Clarification Act provides that "any person who printed an expiration date on any receipt provided to a consumer cardholder at a point of sale or transaction between December 4, 2004, and the date of the enactment of this subsection but otherwise complied with the requirements of section 605(g) for such receipt shall not be in willful noncompliance with section 605(g) by reason of printing such expiration date on the receipt."

63. Defendant accepts Visa, MasterCard, Discover credit and debit cards and American Express credit cards in the course of transacting business with persons who make purchases from Defendant.

64. Banks and credit card associations (i.e. Visa, MasterCard, American Express, Discover, etc.) have informed their merchants, such as Defendant, for years about FACTA and it's the truncation requirement.

65. VISA, MasterCard, the PCI Security Standards Council (a consortium founded by VISA, MasterCard, Discover, American Express), companies that sell cash registers and other

devices for the processing of credit or debit card payments, and other entities informed merchants, such as Defendant, about FACTA, including its specific requirements concerning the truncation of credit card and debit card numbers.

66. Defendant, by the terms of the contracts they entered with Visa, MasterCard, American Express, and/or Discover, acknowledged their awareness of FACTA's truncation requirements and expressly agreed to be FACTA compliant.

67. Visa explicitly instructed merchants, including Defendant, that a credit or debit card number must be truncated to no more than five digits and that the expiration date must be truncated entirely.

68. Credit card issuers have given presentations and circulated compliance information and rules to major retailers and associations of such retailers including, on information and belief, Defendant, to explain how to comply with the truncation requirement...

69. For example, the August 12, 2006 edition of "Rules for Visa Merchants" (p. 62), which is distributed to and binding upon all merchants that accept Visa cards, expressly requires that "only the last four digits of an account number should be printed on the customer's copy of the receipt" and "the expiration date should not appear at all." These statements were accompanied by a picture of a receipt showing precisely what had to be removed. VISA required complete compliance by July 1, 2006, five months ahead of the statutory deadline. Defendant, on information and belief, received this and subsequent Rules from Visa.

70. MasterCard has explicitly instructed merchants, including Defendant, that a credit or debit card number must be truncated to no more than five digits and that the expiration date must be truncated entirely.

71. American Express has explicitly instructed merchants, including Defendant, that a credit or debit card number must be truncated to no more than five digits and that the expiration date must be truncated entirely.

72. Discover has explicitly instructed merchants, including Defendant, that a credit or debit card number must be truncated to no more than five digits and that the expiration date must be truncated entirely.

73. Defendant, on information and belief, received and understood such communications.

74. Despite Defendant's long-standing actual knowledge of FACTA's requirements, Defendant operated for a substantial period of time, possibly since FACTA first went into effect, in reckless, i.e. willful, disregard of FACTA's requirements and continue to use cash registers or other point of sale machines or devices that printed receipts in violation the truncation requirement after 2006.

75. Defendant violated 15 U.S.C. § 1681c(g)(1), which provides that:

> …*no person that accepts credit cards or debit cards for the transaction of business shall print more than the last five digits of the card number* or the expiration date upon any receipt provided to the cardholder at the point of sale or transaction.
>
> 15 U.S.C. § 1681c(g)(1) (emphasis added).

76. FCRA, 15 U.S.C. § 1681n, provides:

> § 1681n. Civil Liability for willful noncompliance
>
> (a) In general.  Any person who willfully fails to comply with any requirement imposed under this title [15 USC §§ 1681 *et seq.*] with respect to any consumer is liable to that consumer in an amount equal to the sum of -
>
> (1) (A) any actual damages sustained by the consumer as a result of the failure or damages of not less than $100 and not more than $1,000; [ ]

>   (2) such amount of punitive damages as the court may allow; and
>
>   (3) in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court…

77. FCRA, 15 U.S.C. § 1681p, further provides:

>   § 1681p. Jurisdiction of courts; limitation of actions
>
>   An action to enforce any liability created under this title [15 U.S.C. §1681 *et seq.*] may be brought in any appropriate United States district court, without regard to the amount in controversy, or in any other court of competent jurisdiction, not later than the earlier of –
>
>   (1) 2 years after the date of discovery by plaintiff of the violation that is the basis for such liability; or
>
>   (2) 5 years after the date on which the violation that is the basis for such liability occurs.

78. Plaintiff Perlstein, and each member of the class as defined, above, has standing to sue in this court under 15 U.S.C. § 1681p, for the statutory damages of not less than $100 nor more than $1,000 provided under 15 U.S.C. § 1681n (a)(1)(A), on any or all of the following bases:

   a. In FACTA, Congress created a substantive legal right for Perlstein and other consumers to receive printed receipts truncating their personal credit card numbers, for the declared purposed of protecting their financial information from the risk of disclosure and ameliorating the risk of identity theft, which Congress specifically identified and addressed through the truncation requirement;

   b. Upon signing FACTA into law, President Bush remarked that "Slips of paper that most people throw away should not hold the key to their savings and financial secrets." 39 Weekly Comp. Pres. Doc. 1746, 1757 (Dec. 4, 2003). President Bush

added that the government, through FACTA, was "act[ing] to protect individual privacy." Id.

    c.    Defendant invaded Plaintiff's privacy by disclosing Plaintiff's private information to those of Defendant's employees who handled the receipts, as well as other persons who might find the receipts in the trash or elsewhere.

    d.    The substantive legal right created by Congress is closely analogous to recognized common law privacy interests which have traditionally be recognized as redressable by individuals suing for violation of their own rights.

    e.    Perlstein and putative class members each personally suffered a concrete harm in receiving receipts that violated this right.

    f.    Such particularized concrete injury-in-fact is redressable by a decision in Mr. Perlstein's and class members' favor awarding the damages Congress expressly mandated with respect to each of Defendant's violations of FACTA, here the truncation requirement.

79.    WHEREFORE, Plaintiff requests this Court to: 1) certify the class as described herein; and 2) enter judgment in favor of Plaintiff and the class members and against Defendant awarding:

    a.    Statutory damages of no less than $100 nor more than $1,000 per violation;

    b.    Pre- and post-judgment interest, attorneys' fees and costs;

    c.    Punitive damages, in an amount to be proven at trial; and

    d.    Such other and further relief as the Court may deem proper.

## JURY TRIAL DEMAND

Plaintiff demands a jury on all issues so triable.

DATED this 10th day of March 2017.

                Respectfully submitted,

                By: /s/ Shimshon Wexler
                    Shimshon Wexler
                The Law Offices of Shimshon Wexler, PC
                216 West 104th St., #129
                New York, New York 10025
                (212) 760-2400
                (917) 512-6132 (FAX)
                shimshonwexler@yahoo.com